[No. S139555. Nov. 5, 2007.]

FRANK GATTUSO et al., Plaintiffs and Appellants, v.
HARTE-HANKS SHOPPERS, INC., Defendant and Respondent.

COUNSEL

Hollins • Schechter, Andrew S. Hollins, Kathleen M. K. Carter, Jeffrey R. Gillette, Alicia K. Berry and Christine R. Arnold for Plaintiffs and Appellants.

Tosdal, Smith, Steiner & Wax and Thomas L. Tosdal for Employee Rights Center as Amicus Curiae on behalf of Plaintiffs and Appellants.

Seyfarth Shaw, Raymond R. Kepner, Ann Haley Fromholz, John A. Van Hook and Holger G. Besch for Defendant and Respondent.

Winston & Strawn, Lee T. Paterson, Tyler M. Paetkau, Robert Spagat and Julia Lapis Blakeslee for Employers Group as Amicus Curiae on behalf of Defendant and Respondent.

Paul, Hastings, Janofsky & Walker and Paul Grossman for California Employment Law Council as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**KENNARD, J.**—Labor Code section 2802, subdivision (a), requires an employer to indemnify its employees for expenses they necessarily incur in

the discharge of their duties.[1] May an employer satisfy this statutory obligation by paying employees increased wages or commissions instead of separately reimbursing them for their actual expenses?

We conclude that an employer may satisfy its statutory reimbursement obligation by paying employees enhanced compensation in the form of increases in base salary or increases in commission rates, or both, provided there is a means or method to apportion the enhanced compensation to determine what amount is being paid for labor performed and what amount is reimbursement for business expenses.

As we will explain, our conclusion differs somewhat from that reached by the trial court and the Court of Appeal, and the differences affect the analysis of another issue presented here, whether the trial court abused its discretion in denying class certification. Accordingly, we reverse the Court of Appeal's judgment and remand the matter to that court for further proceedings consistent with our opinion.

# I

Defendant Harte-Hanks Shoppers, Inc. (Harte-Hanks), is a California corporation that prepares and distributes advertising booklets and leaflets in California, including the PennySaver and the California Shopper. The company is organized geographically in three business units: the Northern California unit, the Southern California unit, and the San Diego unit. To sell advertising space in its publications, Harte-Hanks employs both outside and inside sales representatives. Outside sales representatives meet customers in person at their places of business in assigned geographical territories, while inside sales representatives contact customers by telephone. Outside sales representatives must drive their own automobiles to contact customers, while inside sales representatives work in their employer's offices using employer-owned telephone equipment. Harte-Hanks compensates both outside and inside sales representatives by commissions on advertising sales or by a combination of base salary and commissions. With few exceptions,[2] Harte-Hanks does not separately reimburse outside sales representatives for their automobile expenses.

---

[1] Unless otherwise stated, all further statutory references are to the Labor Code.

[2] For the first few months after being hired in the San Diego unit, an outside sales representative is reimbursed for vehicle expenses by submitting mileage expense reports. In the Southern California unit, some compensation plans include a $50 biweekly mileage payment that is included in the base or guarantee. Also, within each unit, some outside sales representatives have individually negotiated compensation agreements, which may include periodic car allowances or business expense packages.

Plaintiff Frank Gattuso is an outside sales representative in Harte-Hanks's Southern California unit. Plaintiff Ernest Sigala was an outside sales representative in the same unit until January 2000, when his employment with Harte-Hanks terminated. They brought this action on behalf of themselves and other Harte-Hanks outside sales representatives seeking indemnification under section 2802 for expenses incurred in using their own automobiles to perform their employment duties. In response to the complaint, Harte-Hanks took the position that it satisfies its obligation under section 2802 to compensate outside sales representatives for automobile expenses by paying them higher base salaries and higher commission rates than it pays to inside sales representatives.[3]

The trial court asked the parties to brief this issue: "Does Labor Code section 2802 permit an employer to pay increased wages or commissions instead of indemnifying actual expenses necessarily incurred in the discharge of an employee's duties?" After receiving briefing and hearing oral argument, the trial court issued an order accepting Harte-Hanks's argument that section 2802 permits an employer to pay increased salaries or commissions instead of separately reimbursing the employee for actual expenses necessarily incurred in discharging employment duties. The trial court further concluded that the amount or rate of reimbursement could be determined by agreement between employer and employee or, in the absence of an agreement, could be any reasonable amount.

Plaintiffs then moved the trial court (1) to certify a plaintiff class defined as all current and former Harte-Hanks outside sales representatives who were not reimbursed for the expenses they incurred in using their own automobiles after January 1, 1998, to discharge their employment duties; (2) to certify themselves as the class representatives; and (3) to appoint their attorneys as class counsel. After receiving evidence in the form of declarations and depositions, the trial court denied the motion for class certification. The court took the view that plaintiffs had not shown common questions of fact and law, giving this explanation: "Plaintiffs' claim for unpaid business expenses under [section 2802] turns on the determination of two issues (1) whether each individual Harte-Hanks outside sales representative has an agreement about the manner in which he is compensated for expenses, or (2) whether the compensation paid to each individual sales representative is reasonable to compensate for business expenses incurred. The determination of whether there was a meeting of the minds and whether reimbursement was reasonable

---

[3] In the trial court, Harte-Hanks argued in the alternative that section 2802 did not require employers to reimburse employees "for routine expenses of employment such as car expenses," but only for losses caused by third parties. Both the trial court and the Court of Appeal rejected that argument, and Harte-Hanks does not assert it in this court. Accordingly, we do not address it here.

necessarily requires an individualized inquiry as to each outside sales representative. The requirement of commonality therefore is not met, and Plaintiffs' claim for unpaid business expenses cannot be maintained as a class action."

Plaintiffs appealed from the order denying class certification, and on appeal they also challenged the earlier order interpreting section 2802. The Court of Appeal affirmed, agreeing with the trial court's interpretation of section 2802 and concluding that the trial court did not abuse its discretion in denying plaintiffs' motion for class certification. The Court of Appeal denied plaintiffs' petition for rehearing, and we granted plaintiffs' petition for review.

## II

Section 2802, subdivision (a), provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Subdivision (c) of section 2802 defines " 'necessary expenditures or losses' " as including "all reasonable costs . . . ."

A related provision, section 2804, expressly prohibits waiver of the rights afforded under section 2802. Section 2804 provides: "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State."

### A.  *Legislative History*

Sections 2802 and 2804 were enacted in 1937 as part of the original Labor Code.[4] (Stats. 1937, ch. 90, pp. 185, 258–259.) Section 2802 was derived from former section 1969 of the Civil Code, which had been enacted in 1872.[5] Section 2804 was derived from a 1907 amendment to former section 1970 of the Civil Code. (Stats. 1907, ch. 97, § 1, p. 120.) In 2000, the

---

[4] As enacted in 1937, section 2802 read: "An employer shall indemnify his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying such directions, believed them to be unlawful." (Stats. 1937, ch. 90, pp. 185, 258.)

[5] As first enacted in 1872, former section 1969 of the Civil Code provided: "An employer must indemnify his employé, except as prescribed in the next section, for all that he necessarily

Legislature amended section 2802 to its present form. (Stats. 2000, ch. 990, § 1.) Section 2804 has not been amended since its enactment in 1937.

At the time of the 2000 amendment of section 2802, legislative committee analyses identified the purpose of that provision: "The author [of the amending legislation] states that Section 2802 is designed to prevent employers from passing their operating expenses on to their employees. For example, if an employer requires an employee to travel on company business, the employer must reimburse the employee for the cost of that travel under Section 2802." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1305 (1999–2000 Reg. Sess.) as amended Aug. 18, 2000, p. 3.)

B. *Appellate Decisions Construing or Applying Section 2802*

Relatively few appellate decisions have construed or applied section 2802, and none of those decisions has much relevance to the issue here. Not relevant here, for example, are decisions concerning an employer's obligation under section 2802 to pay legal expenses that an employee incurs in defending a third party action based on the employee's job-related conduct. (E.g., *Plancarte v. Guardsmark* (2004) 118 Cal.App.4th 640, 647–648 [13 Cal.Rptr.3d 315]; *Jacobus v. Krambo Corp.* (2000) 78 Cal.App.4th 1096, 1100–1101 [93 Cal.Rptr.2d 425]; *Devereaux v. Latham & Watkins* (1995) 32 Cal.App.4th 1571, 1583 [38 Cal.Rptr.2d 849]; *Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52, 56–59 [1 Cal.Rptr.2d 808]; *Douglas v. Los Angeles Herald-Examiner* (1975) 50 Cal.App.3d 449, 457–461 [123 Cal.Rptr. 683].) Also unhelpful here are decisions concerning section 2802's application to public entity employers. (E.g., *In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 345 [34 Cal.Rptr.3d 635] [public entities not required to pay the cost of employee uniforms]; *Los Angeles Police Protective League v. City of Los Angeles* (1994) 27 Cal.App.4th 168, 171 [32 Cal.Rptr.2d 574] [public entities not required to pay expenses for defending criminal charges].)

Also of doubtful relevance are other decisions concerning nonrecurring business expenses. For example, in *Machinists Automotive Trades Dist. Lodge v. Utility Trailers Sales Co.* (1983) 141 Cal.App.3d 80 [190 Cal.Rptr. 98], the Court of Appeal held that when "the custom of the trade requires the

---

expends or loses in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the employé, at the time of obeying such directions, believed them to be unlawful."

The referenced "next section" was former section 1970 of the 1872 Civil Code, which originally read: "An employer is not bound to indemnify his employé for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employé."

employee to supply his own tools" and the tools were "too heavy to be transported routinely to and from the place of employment," section 2802 required the employer to reimburse the employee for the loss suffered when the employee's tools were stolen from the employer's premises. (*Machinists Automotive Trades Dist. Lodge v. Utility Trailers Sales Co., supra,* at p. 86.) That case disagreed with an earlier Court of Appeal decision (*Earll v. McCoy* (1953) 116 Cal.App.2d 44 [253 P.2d 86]) that had reached the opposite conclusion in a similar situation, where the employee's tools were destroyed by a fire on the employer's premises. (*Machinists Automotive Trades Dist. Lodge v. Utility Trailers Sales Co., supra,* at p. 83.)

### C. *Administrative Construction and Enforcement*

The Division of Labor Standards Enforcement (DLSE) is the state agency authorized to enforce California's labor laws. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1084 [32 Cal.Rptr.3d 483, 116 P.3d 1162]; *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581 [94 Cal.Rptr.2d 3, 995 P.2d 139].) The Labor Commissioner is the chief of the DLSE. (§§ 79, 82.) In 1996, this court held that all of the DLSE's interpretive policies contained in its 1989 operations and procedures manual were regulations that were void because they had not been promulgated in compliance with the Administrative Procedure Act (Gov. Code, § 11340 et seq.). (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 572 [59 Cal.Rptr.2d 186, 927 P.2d 296].) We also concluded that insofar as the void regulations reflected the DLSE's statutory interpretations, those interpretations were entitled to no deference. (*Id.* at pp. 576–577.) Nonetheless, we said, a court may adopt a DLSE statutory interpretation embodied in a void regulation if the court independently determines that the interpretation is correct. (*Id.* at p. 577.)

Here, as the parties agree, the DLSE's interpretation of section 2802, as applied to automobile expenses, was incorporated into a void regulation. Accordingly, we review the relevant DLSE policy statements and DLSE advice and opinion letters as evidence of the DLSE's interpretation of sections 2802 and 2804, recognizing that its interpretation is entitled to no deference but also that this court may adopt the DLSE's interpretation if we independently determine that it is correct.

### 1. Interpretive Bulletin No. 84-7

On January 8, 1985, the Labor Commissioner issued a revision to Interpretive Bulletin No. 84-7. As relevant here, it stated: "Under Labor Code Section 2802, an employer who requires an employee to furnish his/her own car or truck to be used in the course of employment would be obligated to reimburse the employee for the costs necessarily incurred by the employee in

using the car or truck in the course of employment. The rate of reimbursement can be that agreed to by the employer and employee, or, if there is no such agreement, any reasonable amount." (*Ibid.*)

### 2. *Opinion Letter No. 1993.02.22-3*

On February 22, 1993, H. Thomas Cadell, Jr., as DLSE Chief Counsel, wrote an advice letter to an attorney. As relevant here, it stated: "[T]he payment of a reasonable mileage reimbursement covers all reasonable operating costs incurred by the employee in the operation of the vehicle. The DLSE accepts the mileage reimbursement used by the IRS as reasonable. Those operating costs would include damages or loss due to accident or theft unless the damage to or the loss of the vehicle due to accident or theft was the result of the negligence of the employer. [¶] . . . [¶] . . . In the absence of an agreement to pay a reasonable mileage reimbursement, the employer would be required to reimburse the employee for the actual costs incurred in operating the vehicle while that vehicle was being used in the service of the employer. Those costs would include, of course, losses due to accident or theft while the vehicle is being used for the purposes of the employer."

### 3. *July 1993 DLSE Update*

The DLSE embodied the substance of the February 22, 1993, opinion letter in a bulletin update issued in July 1993. It reads:

"[T]he payment of a reasonable mileage reimbursement covers all reasonable operating costs incurred by the employee in the operation of a personal vehicle for business purposes. The DLSE accepts the mileage reimbursement used by the IRS as reasonable. Those operating costs would include damages or loss due to accident or theft, unless the damage or loss was the direct result of the negligence of the employer.

"In the absence of an agreement to pay a reasonable mileage reimbursement, the employer would be required to reimburse the employee for the actual costs incurred in operating the vehicle while that vehicle was being used in the service of the employer. Those costs would include losses due to accident or theft while the vehicle is being used for business purposes."

### 4. *Opinion Letter No. 1994.08.14*

On August 14, 1994, H. Thomas Cadell, Jr., as DLSE Chief Counsel, wrote an opinion letter to an attorney to clarify and confirm a previous telephone conversation. As relevant here, the letter stated: "I stated, I am sure, that the DLSE has long recognized the IRS rate for automobile reimbursement as a

presumptively reasonable rate. . . . The policy of the DLSE continues to be that the IRS rate is presumptively reasonable for purposes of reimbursement of automobile expenses."

### 5.  *Opinion Letter No. 1998.11.05*

On November 5, 1998, Michael S. Villeneuve, as DLSE Staff Counsel, wrote an opinion letter to respond to a question asking whether Labor Code section 2802 requires employers "to reimburse employees for automobile insurance premiums for coverage above the legal minimum." As relevant here, the letter stated:

"As long as the employer reimburses the employee for the cost of the insurance and does not dictate which company supplies the insurance, the Labor Code does not prevent the employer you describe from requiring its employees to obtain insurance coverage beyond the legal minimum. Those expenses which an employer causes an employee to incur, however, must be reimbursed, since Labor Code § 2802 requires that the employer indemnify the employee for such loss or expenditure which is in direct consequence of the discharge of his duties. Thus the question becomes whether a 'reasonable' mileage reimbursement covers operating expenses incurred.

"The application of the Internal Revenue Service mileage allowance as a deduction from income for taxation purposes, which has been previously viewed by DLSE as 'reasonable' as a measure of expenses, is not dispositive with respect to the issue of indemnification of expenses actually incurred. The IRS figure is a national average of the costs of operating a motor vehicle without respect to initial cost of purchase or lease (which affects depreciation allowance), repairs and maintenance, fluctuating fuel costs, and, of course, cost of insurance, which varies widely state to state, and locality to locality.

"Prior enforcement of Section 2802 where employers paid less than the IRS mileage rate viewed such compensation as being rebuttably presumed not to comply with Section 2802. Thus, if the employer could prove that the actual costs incurred by the employee were less than the IRS rate, no violation of Section 2802 occurs if the employee is indemnified for actual expenses incurred. Conversely, payment of the IRS allowance rate confers no irrebuttable presumption of compliance with Section 2802. Rather, the burden shifts to the employee to prove that actual expenses incurred exceeded the amount tendered by the employer. If the employee successfully demonstrates that additional insurance coverage raises the cost of operating the vehicle beyond the IRS mileage figure, the employer will be obligated to cover such costs. Naturally this determination must be made on a case by case basis, as insurance costs will vary depending on the domicile and use locations.

"Thus while the Division generally finds the IRS mileage rate as reimbursement to be reasonable, no overall exemption from liability under Section 2802 can be given. Since the IRS mileage rate is based, in part, on average costs of insurance premiums as applied to drivers with average driving records, a particular driver may be able to demonstrate that higher costs were necessarily incurred in the purchase of such insurance." (Fn. omitted.)

### 6. *Letter Dated September 12, 2000*

On September 12, 2000, Patricia K. Huber, as Deputy Labor Commissioner, wrote a letter to a corporation's general counsel. As relevant here, the letter stated: "The cost of operating a vehicle is a reimbursable expense under Labor Code Section 2802. If there is no specific agreement as to the mileage rate, the IRS rate is considered reasonable and is used. Otherwise, the employer is responsible for the actual costs incurred in operating the vehicle."

### 7. *Letter Dated December 27, 2005*

On December 27, 2005, Anne Hipsham, as Staff Counsel for the Labor Commissioner, wrote a letter to this court urging depublication of the Court of Appeal's opinion in this case. In relevant part, the letter stated:

"The Labor Commissioner has developed an enforcement position that the Internal Rev[en]ue Service (IRS) rate of reimbursement is the acceptable level for reimbursement of mileage for an employee's use of a personal vehicle. . . . [¶] The DLSE reached this conclusion after many decades of enforcement in the area of reimbursement for mileage for personal vehicles required to be driven for work-related activities, because of the difficulty in accurately determining the precise amount an employee should be reimbursed for purposes of meeting the indemnification language contained in Section 2802.

"The mileage reimbursement rate is compiled by the IRS by taking into account all factors involved with the use of a vehicle: fuel, maintenance, repairs, depreciation, insurance, etc. by annually conducting a national survey and coming up with appropriate averages.

"The DLSE enforcement position also allows for a deviation from the IRS rate where appropriate. If an employer wants to pay less than this established IRS rate, the employer bears the burden of proving that the employee's costs of operating the vehicle for work is actually less. If the employee seeks a rate of reimbursement higher than the IRS rate, the employee bears . . . the burden [of] proving that his or her actual operating costs are higher."

## III

When construing a statute, a court's goal is "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726]; accord, *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1087 [29 Cal.Rptr.3d 234, 112 P.3d 623].) Generally, the court first examines the statute's words, giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator of legislative intent. (*Hassan v. Mercy American River Hospital, supra,* at p. 715; accord, *City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 625 [26 Cal.Rptr.3d 304, 108 P.3d 862].)

When the statutory language is ambiguous, a court may consider the consequences of each possible construction and will reasonably infer that the enacting legislative body intended an interpretation producing practical and workable results rather than one producing mischief or absurdity. "Our decisions have long recognized that a court's 'overriding purpose' in construing a statute is 'to give the statute a *reasonable* construction conforming to [the Legislature's] intent [citation] . . . .' " (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1299, fn. 22 [48 Cal.Rptr.3d 183, 141 P.3d 288], quoting *Massey v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 674, 681 [20 Cal.Rptr.2d 825, 854 P.2d 117], original italics.) "The court will apply common sense to the language at hand and interpret the statute to make it workable and reasonable." (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1122 [29 Cal.Rptr.3d 262, 112 P.3d 647].) "When a statute is capable of more than one construction, ' "[w]e must . . . give the provision a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." ' " (*In re Reeves* (2005) 35 Cal.4th 765, 771, fn. 9 [28 Cal.Rptr.3d 4, 110 P.3d 1218], quoting *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 [110 Cal.Rptr.2d 828, 28 P.3d 876], quoting *Marshall M. v. Superior Court* (1999) 75 Cal.App.4th 48, 55 [88 Cal.Rptr.2d 891].)

Here, the parties agree that section 2802, which requires an employer to indemnify its employees for expenses they necessarily incur in the discharge of their duties, requires Harte-Hanks to fully reimburse its outside sales representatives for the automobile expenses they actually and necessarily incur in performing their employment tasks. They disagree only on whether

section 2802 permits an employer to do so through an increase in overall compensation rather than through a separately identified reimbursement payment.

The parties agree that one method an employer may use for automobile expense reimbursement is to calculate the automobile expenses that the employee actually and necessarily incurred and then to separately pay the employee that amount. This *actual expense method* is the most accurate, but it is also the most burdensome for both the employer and the employee. The actual expenses of using an employee's personal automobile for business purposes include fuel, maintenance, repairs, insurance, registration, and depreciation. To calculate the reimbursement amount using the actual expense method, therefore, the employee must keep detailed and accurate records of amounts spent in each of these categories. Calculation of depreciation will require information about the automobile's purchase price and resale value (or lease costs). In addition, the employee must keep records of the information needed to apportion those expenses between business and personal use. This is generally done by separately recording the miles driven for business and personal use. The employee then must submit all of this information to the employer for calculation of the reimbursement amount due.

█ In calculating the reimbursement amount due under section 2802, the employer may consider not only the actual expenses that the employee incurred, but also whether each of those expenses was "necessary," which in turn depends on the reasonableness of the employee's choices. (See *Grissom v. Vons Companies, Inc.*, *supra*, 1 Cal.App.4th at p. 58 [under § 2802, "ascertaining what was a necessary expenditure will require an inquiry into what was reasonable under the circumstances"].) For example, an employee's choice of automobile will significantly affect the costs incurred. An employee who chooses an expensive model and replaces it frequently will incur substantially greater depreciation costs than an employee who chooses a lower priced model and replaces it less frequently. Similarly, some vehicles use substantially more fuel or require more frequent or more costly maintenance and repairs than others. The choice of vehicle will also affect insurance costs. Other employee choices, such as the brand and grade of gasoline or tires and the shop performing maintenance and repairs, will also affect the actual costs. Thus, calculation of automobile expense reimbursement using the actual expenses method requires not only detailed recordkeeping by the employee and complex allocation calculations, but also the exercise of judgment (by the employer, the employee, and officials charged with enforcement of § 2802) to determine whether the expenses incurred were reasonable and therefore necessary.

Because of the onerous burdens that the *actual expense method* imposes on both employer and employee, few employers use this method to determine reimbursement for work-required use of employees' own automobiles, and both parties here agree that the actual expense method is not the only method that an employer may use to satisfy its reimbursement obligations under section 2802. Both parties agree that an employer may also use the *mileage reimbursement method.*

■ When an employer uses the *mileage reimbursement method* to determine the amount of reimbursement due under section 2802 for work-required use of an employee's own automobile, the employee need only keep a record of the number of miles driven to perform job duties. The employee submits that information to the employer, who then multiplies the work-required miles driven by a predetermined amount that approximates the per-mile cost of owning and operating an automobile. As indicated in the DLSE opinion letters and policy statements previously quoted, the federal Internal Revenue Service (IRS) has calculated an automobile mileage rate for federal income tax purposes, based on national average expenses for fuel, maintenance, repair, depreciation, and insurance, and this IRS mileage rate is also widely used and accepted by private business employers for calculating reimbursable employee automobile expenses. Here, both parties agree that section 2802 permits use of the IRS mileage rate to calculate automobile expense reimbursement under the mileage reimbursement method.

■ Because a mileage rate used in the mileage reimbursement method is merely an approximation of actual expenses, the mileage reimbursement method is inherently less accurate than the actual expense method. Because section 2802 requires the employer to fully reimburse the employee for all expenses actually and necessarily incurred, both parties here agree that if an employer uses the mileage reimbursement method, the employee must be permitted to challenge the resulting reimbursement payment. If the employee can show that the reimbursement amount that the employer has paid is less than the actual expenses that the employee has necessarily incurred for work-required automobile use (as calculated using the actual expense method), the employer must make up the difference.

■ The DLSE interpretive bulletin (see, *ante,* at p. 563) said that the mileage rate could be set by agreement of the parties, and the trial court stated that it independently reached the same conclusion. We agree that, as with other terms and conditions of employment, a mileage rate for automobile expense reimbursement may be a subject of negotiation and agreement between employer and employee. Under section 2804, however, any agreement made by the employee is null and void insofar as it waives the

employee's rights to full expense reimbursement under section 2802. Therefore, the existence of an agreement concerning a mileage reimbursement rate would not relieve the employer of the statutory obligation to provide complete reimbursement, nor would it preclude an employee from challenging the sufficiency of a reimbursement payment that was calculated using the agreed mileage rate.

■ Another automobile expense reimbursement method is the use of a *lump-sum payment*. Under this method, the employee need not submit any information to the employer about work-required miles driven or automobile expenses incurred. The employer merely pays a fixed amount for automobile expense reimbursement. The fixed amount may take various forms and have various labels, including per diem, car allowance, and gas stipend. The amount is generally based on the employer's understanding of the employee's job duties, including the number of miles that the employee typically or routinely must drive to perform those duties. Although the parties here agree that an employer may use either the actual expense method or the mileage reimbursement method, they do not agree on whether section 2802 permits an employer to use a lump-sum method to reimburse employee automobile expenses.

Plaintiffs contend that section 2802 does not permit an employer to use the *lump-sum method* for automobile expense reimbursement. They argue that "compliance with section 2802 requires that an employer must correlate the employee's reimbursement to the incurred expenses" because "[c]orrelation is necessary to guarantee reimbursement of employee expenses." Harte-Hanks argues, to the contrary, that section 2802 does not require employers to use a "correlated" reimbursement plan, that section 2802 does not restrict the methods by which the employer may calculate reimbursement, and that section 2802 requires only that whatever method is used results in full reimbursement for actual expenses necessarily incurred by the employee.

■ We agree with Harte-Hanks, and also with the trial court and the Court of Appeal, that section 2802 does not prohibit an employer's use of a *lump-sum method* to reimburse employees for work-required automobile expenses, provided that the amount paid is sufficient to provide full reimbursement for actual expenses necessarily incurred. Nothing in the language of section 2802 restricts the methods that an employer may use to calculate reimbursement, and we are required to construe section 2802 in a manner that produces a workable and reasonable result. If, for example, an employee

drives exactly the same route day after day, so that the mileage driven varies little if at all from one day to the next, it would be unreasonable to require a meticulous record of actual miles driven. In that situation, an employer should be able to dispense with actual mileage reports and calculate a lump-sum payment based on the employer's knowledge of the distances that an employee must drive to perform the duties of the employee's job.

In support of their argument that section 2802 requires a method of automobile expense reimbursement that is "correlated" to actual expenses incurred or miles driven, plaintiffs cite no authority apart from section 2802 itself. They argue only that correlation is necessary to allow effective enforcement of employees' rights under section 2802.

Of course, an employee must be permitted to challenge the amount of a lump-sum payment as being insufficient under section 2802. An employee may do so by comparing the payment with the amount that would be payable under either the actual expense method or the mileage reimbursement method. If the comparison reveals that the lump sum is inadequate, the employer must make up the difference. As with mileage rates, an employer and an employee may agree on a particular lump sum to be paid as automobile reimbursement. But, under section 2804, the existence of an agreement between an employer or employee regarding a lump-sum reimbursement payment would not relieve the employer of the statutory obligation to pay full reimbursement, nor would it bar an employee challenge to a lump-sum payment as being insufficient under section 2802 to provide full reimbursement.

As Harte-Hanks points out, an employer's decision to use a lump-sum method rather than a mileage reimbursement system may have income tax consequences, affecting whether the resulting payments are exempt from withholding requirements (see, e.g., *Shotgun Delivery, Inc. v. U.S.* (9th Cir. 2001) 269 F.3d 969, 972–973) and, ultimately, the extent to which they are taxable as income or instead treated as deductible business expenses. We agree with Harte-Hanks, however, that section 2802 does not require an employer to use a reimbursement method that is congruent with any tax law or has any particular tax consequence. Of course, as Harte-Hanks concedes, and as the Court of Appeal also concluded, any tax consequences that result from the employer's choice of reimbursement method should be considered in determining whether a particular payment provides the full measure of reimbursement that section 2802 requires.

Having concluded that section 2802 permits an employer's use of a *lump-sum* method to reimburse an employee for work-required automobile expenses, we next consider whether the employer must segregate the lump sum from other compensation or whether, as the trial court and the Court of Appeal concluded, the employer instead may pay the lump sum in the form of an increase to the employee's base salary or commissions. Plaintiffs argue that the reimbursement amount must be kept entirely separate from salary and commissions, for these reasons: (1) the statutory definition of "wages" in section 200 excludes reimbursement payments; (2) section 226, which requires employers to itemize their wage payments, does not contemplate inclusion of business expense reimbursement within wage payments; and (3) allowing business expense reimbursement payments to be combined with wage payments contradicts the DLSE's long-standing interpretation of section 2802. We consider these objections in turn.

Plaintiffs argue first that expense reimbursements cannot be wages, and reimbursement payments therefore must be separated from base salary and commissions. They rely on section 200, subdivision (a), which states that "[a]s used in this article . . . '[w]ages' includes all amounts *for labor performed* by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." (Italics added.) Plaintiffs argue that because wages are paid "for labor performed" whereas payments under section 2802 are reimbursement for work-required expenses the employee has incurred, a wage payment, whether in the form of salary or commission, cannot be used to discharge an employer's obligation under section 2802.

Section 200 highlights a valid and important distinction between wages (as payment for labor performed) and business expense reimbursement. The amount payable as wages is subject to various statutory restrictions, including minimum wage laws, which operate independently of, and in addition to, section 2802's obligation of an employer to fully reimburse an employee's necessary business expenses. The amount payable as wages may also be fixed by a contract of employment, and contractual agreements regarding employee compensation may or may not include specific terms governing business expense reimbursement. Because wages and expense reimbursement are conceptually distinct and subject to different statutory and sometimes also contractual constraints, an employer may not combine the payments for both in a way that would seriously hamper or effectively preclude enforcement of the various statutory and contractual obligations.

This does not mean, however, that an employer is prohibited from combining wages and business expense reimbursements in a single enhanced employee compensation payment or from discharging its section 2802 business

expense reimbursement obligation through an increase in base salary or in commission rates (or an increase in both salary and commission rates). It simply means that the employer must provide some method or formula to identify the amount of the combined employee compensation payment that is intended to provide expense reimbursement. Using that method or formula, the employee (and also officials charged with enforcement of state and federal wage laws) then can readily determine whether the employer has discharged all of its legal obligations as to both wages and business expense reimbursement. Although section 2802 does not expressly require the employer to provide an apportionment method, it is essential that employees and officials charged with enforcing the labor laws be able to differentiate between wages and expense reimbursements. Because providing an apportionment method is a practical necessity for effective enforcement of section 2802's reimbursement provisions, it is implicit in the statutory scheme.

An employer that chooses to link expense reimbursement to employee performance by providing automobile expense reimbursement through an increase in commission rates, as Harte-Hanks alleges it has done, runs a risk that the employee, for whatever reason, may earn less commission income than the employer anticipated, so that the increase in the commission rate may be insufficient to provide full reimbursement for the automobile expenses that the employee necessarily incurred. If that happens, the employer's full reimbursement obligation under section 2802 will require it to make up the difference. Harte-Hanks concedes that this is so. This is not a reason, however, to conclude that section 2802 prohibits this method of business expense reimbursement.

We next consider plaintiffs' argument that providing section 2802 automobile expense reimbursement through enhanced employee compensation, in the form of increases in base salary and/or commission rates, would violate or be inconsistent with an employer's obligation under section 226, subdivision (a), to itemize employee compensation payments. Section 226, subdivision (a), provides: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her

social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California."

We find nothing in the language of section 226, subdivision (a), that prohibits an employer from discharging its reimbursement obligations under section 2802 by increases in base salary or commission rates. Section 226, subdivision (a), requires the employer to document the basis of the employee compensation payments, including the gross wages earned, the hours worked, the number of piece-rate units earned, and each deduction taken. As we have explained, an employer that uses salary and/or commission increases to discharge its reimbursement obligation must also communicate to its employees the method or basis for apportioning any increases in compensation between compensation for labor performed and business expense reimbursement. Such a requirement, as noted, is necessary for effective enforcement of section 2802's reimbursement provisions and, thus, implicit in the statutory scheme.[6]

Plaintiffs argue, finally, that allowing an employer to combine business expense reimbursement with payments for labor performed contradicts the DLSE's long-standing interpretation of section 2802. As we have explained, however, the DLSE's interpretation of section 2802, because it was embodied in a void regulation, is not entitled to deference. (*Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at pp. 576–577.) In any event, with the exception of the DLSE letter urging depublication of the Court of Appeal's opinion in this case, none of the DLSE policy statements or opinion letters that have been made part of the record in this case addresses the question at issue here. Although the DLSE has endorsed both the actual expense method and the mileage reimbursement method for discharging an employer's obligations under section 2802, the DLSE has not, so far as we are aware, considered or rejected other methods, such as the use of a lump-sum payment

---

[6] In the future, employers that provide business expense reimbursement to employees through increases in base salary or commission rates should, in providing the documentation required by section 226, subdivision (a), separately identify the amounts that represent payment for labor performed and the amounts that represent reimbursement for business expenses.

or enhanced compensation in the form of an increase in base salary and/or commission rates. Accordingly, the DLSE's construction of section 2802, as explained in the materials in the record before us, does not support plaintiffs' position.

■ We conclude that an employer may satisfy its statutory business expense reimbursement obligation under section 2802 by paying employees enhanced compensation in the form of increases in base salary or commission rates, provided the employer establishes some means to identify the portion of overall compensation that is intended as expense reimbursement, and provided also that the amounts so identified are sufficient to fully reimburse the employees for all expenses actually and necessarily incurred.

## IV

The remaining issue is whether the trial court abused its discretion in denying plaintiffs' motion to certify a plaintiff class defined as all current and former Harte-Hanks outside sales representatives who were not reimbursed for the expenses they incurred in using their own automobiles after January 1, 1998, to discharge their employment duties.

■ Under Code of Civil Procedure section 382, a class action is permitted "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." Class certification requires both an ascertainable class and a well-defined community of interest among class members. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194]; accord, *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 [56 Cal.Rptr.3d 861, 155 P.3d 268].) Here, the trial court concluded that plaintiffs had established an ascertainable class but also that they had failed to satisfy the "community of interest" requirement.

■ "The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 326.) The trial court here concluded that plaintiffs had failed to show the existence of predominant questions of law or fact.

The trial court's ruling on the class certification motion is reviewed for abuse of discretion. (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 326.) If supported by substantial evidence, a class certification

ruling "generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation].' " (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27]; accord, *Sav-On Drug Stores, Inc. v. Superior Court, supra,* at pp. 326–327.)

In concluding that common issues did not predominate here, the trial court reasoned that plaintiffs' claims under section 2802 would "turn[] on the determination of two issues (1) whether each individual Harte-Hanks outside sales representative has an agreement about the manner in which he is compensated for expenses, or (2) whether the compensation paid to each individual sales representative is reasonable to compensate for business expenses incurred" and that both determinations would require "an individualized inquiry as to each outside sales representative."

The class that plaintiffs sought to certify consisted of all Harte-Hanks outside sales representatives "who were not reimbursed for the expenses they incurred in using their own automobiles after January 1, 1998." We construe this to refer to the Harte-Hanks outside sales representatives who were not *separately* reimbursed, apart from their base salary and commissions. Not included in the proposed class, therefore, are the relatively few Harte-Hanks outside sales representatives who received automobile expense reimbursement through a separate payment, whether as the result of an individually negotiated compensation package or otherwise. (See fn. 2, *ante,* at p. 559.)

Harte-Hanks has taken the position that as to the members of this proposed class, it fulfilled its reimbursement obligation under section 2802 by paying them higher commission rates and higher base salaries than it paid to inside sales representatives. As we explained in the previous section, the validity of this claim will turn on the resolution of these questions: (1) Did Harte-Hanks adopt a practice or policy of reimbursing outside sales representatives for automobile expenses by paying them higher commission rates and base salaries than it paid to inside sales representatives? (2) If so, did it establish a method to apportion the enhanced compensation payments between compensation for labor performed and expense reimbursement? (3) If so, was the amount paid for expense reimbursement sufficient to fully reimburse the employees for the automobile expenses they reasonably and necessarily incurred?

Neither the trial court nor the Court of Appeal framed the class certification issue in that way, and so neither court considered whether these inquiries are capable of resolution on a classwide basis. Accordingly, the class certification issue is to be reconsidered upon remand.

## V

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with this court's opinion.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.