**Haroun ZELLAGÚI, for himself and all others similarly situated, Plaintiff,**

**v.**

**MCD PIZZA, INC. and Serah Enterprises, Inc., Defendants.**

**Case No. 2:14–CV–01475–JHS.**

United States District Court, E.D. Pennsylvania.

Signed Nov. 13, 2014.

David J. Cohen, Kolman Ely PC, Penndel, PA, Jeremiah Frei–Pearson, Finkelstein, Blankinship, Frei–Pearson & Garber LLP, White Plains, NY, for Plaintiff.

## ORDER

JOEL H. SLOMSKY, District Judge.

Defendants MCD Pizza, Inc. and Serah Enterprises, Inc. ("Defendants" or "Domino's") have owned and operated approximately ten Domino's Pizza stores in Pennsylvania since 2010. Cmplt. ¶ 9 (Doc. No. 1); Zellagui Decl. ¶ 3 (Doc. No. 8). Domino's accommodates its customers' delivery requests by hiring drivers to transport food and drink orders from its stores to customers' homes. Cmplt. ¶ 11. Defendants employ an average of fifteen delivery drivers in each of their ten stores at any given time. Zellagui Decl. ¶ 3. Plaintiff was one such delivery driver. Cmplt. ¶ 4.

From December 2010 to June 2013, Plaintiff worked at several of Defendants' locations. Id.; Zellagui Decl. ¶ 4. Like all of Defendants' delivery drivers, Plaintiff was scheduled to work nine-hour shifts. Zellagui Decl. ¶ 6; Cmplt. ¶ 14. However, Plaintiff and the Class members routinely worked two extra hours past the end of each shift to complete extra work like cleaning the store, putting away food and equipment and preparing the store for the next shift. Zellagui Decl. ¶¶ 6–9; Cmplt. ¶ 34. As a result, Plaintiff and the Class members worked an average of 11 hours per day. Id.

On a typical shift, Plaintiff and the Class members spent four hours in the store performing non-tipped work and seven hours on the road making deliveries for which they were eligible to receive tips. Zellagui Decl. ¶ 10; Cmplt. ¶ 15.

At all times, Defendants paid Plaintiff and the Class members $6.00 per hour, regardless of whether they were performing tipped work or working overtime hours. Zellagui Decl. ¶ 15; Cmplt. ¶¶ 1, 4, 18, 31, 36, 43, 67. While out on the road, Plaintiff and the Class members were also paid a supplemental wage of $1.00 per delivery. Zellagui Decl. ¶ 15; Cmplt. ¶ 31.

As a result, Plaintiff alleges that he and the Class members were: (1) paid less than the minimum wage for their non-tipped, in-store work; (2) under-reimbursed for their vehicle expenses while making deliveries, thereby bringing their hourly wages below the applicable tipped minimum; and (3) not paid one and one-half times the mandatory minimum for any of their overtime hours.

Because Defendants failed to appear, plead, or otherwise defend the action, Default was entered against them on May 1, 2014. All well-plead factual allegations in the Complaint, except those relating to damages, are therefore accepted as true. See Eastern Elec. Corp. of N.J. v. Shoemaker Const. Co., 657 F.Supp.2d 545, 552 (E.D.Pa.2009); Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir.1990).

To determine the amount of damages, the Court may conduct a hearing and accept affidavits from the plaintiff. Schwartzman v. Rogue Int'l Talent Group, Inc., No. 12–5255, 2013 WL 5948028, at *4 (E.D.Pa. Nov. 7, 2013) (citing Eastern Elec. Corp. of N.J., 657 F.Supp.2d at 552). "The damage calculation need only be reasonable; it need not meet a standard of mathematical certainty." Id. Here, most of the factual allegations regarding liability are coextensive with those regarding damages. See Hanna v. CFL Pizza, LLC, No. 11–1837, 2012 WL 515875, at *5 (M.D.Fla. Jan. 30, 2012) (in a similar pizza delivery driver case, finding "the under-reimbursement issue ... not much more than a simple mathematical equation"), report

*and recommendation adopted,* 2012 WL 513017 (M.D.Fla. Feb. 16, 2012).

Additionally, in calculating damages, a three-year statutory period applies. *See Walker v. Washbasket Wash & Dry,* No. 99–4878, 2001 WL 770804, at *12 (E.D.Pa. July 5, 2001) ("The statute of limitations for claims arising under the ... MWA is three years") (citing 43 P.S. § 260.9a(g)).

### *Non–Tipped, In–Store Work*

■ When employees perform both tipped and non-tipped work, employers must pay the full minimum wage for all hours that their employees spend performing non-tipped tasks. *See, e.g., Driver v. AppleIllinois, LLC,* 890 F.Supp.2d 1008, 1031, 1037 (N.D.Ill.2012) (granting summary judgment under Illinois Minimum Wage Law to class of employees who were paid less than the minimum wage while performing non-tipped functions).

Plaintiff claims that Defendants violated the Pennsylvania Minimum Wage Law ("MWA") by failing to pay their delivery drivers at least $7.25 per hour for any of the hours they spent performing non-tipped tasks in the store. Zellagui Decl. ¶ 15; ¶¶ 62–73.

■ Plaintiff alleges that, during a typical eleven-hour work day, he and the Class members spent approximately four hours performing non-tipped work in the store. Cmplt. ¶¶ 14–15, 18; Zellagui Decl. ¶ 10. Plaintiff further alleges that he and the Class members were always paid $6.00 per hour for their non-tipped work. Cmplt. ¶¶ 14–20, 62–73; Zellagui Decl. ¶ 15. Pennsylvania's minimum wage rate has been $7.25 per hour throughout the relevant period. Taking these factual allegations as true, Plaintiff has stated a *prima facie* minimum wage violation based on Defendants' failure to provide proper wages for un-tipped, in-store work.

The amount of damages owed on this claim is readily ascertainable from the evidentiary record. Defendants paid Plaintiff $1.25 per hour less than the applicable minimum wage. Because the statutory period extends back three years from the date of the Complaint, the damages on this claim are as follows:

| | Hourly Rate | Per Shift (4 hours) | Per Week (5 shifts) | 191 Weeks[1] |
|---|---|---|---|---|
| **Paid** | $6.00 | $24.00 | $120.00 | $22,920.00 |
| **Minimum** | $7.25 | $29.00 | $145.00 | $27,695.00 |
| **Difference** | ($1.25) | ($5.00) | ($25.00) | ($4,775.00) |
| **Total for Class (150 members)** | | | | ($716,250.00) |

Thus, the total damages owed on Plaintiff's under-reimbursement claim is **$716,250.00.**

### *Tipped Deliveries*

■ Employers are required to reimburse hourly-paid employees who drive for work to cover the vehicle-related expenses they incur so their hourly wages do not fall below the minimum when those expenses are taken into account. *See, e.g., Perrin v. Papa John's Int'l, Inc.,* 818 F.Supp.2d 1146 (E.D.Mo.2011) (denying motion to dismiss delivery drivers' FLSA and state law under-reimbursement claims); *Darrow v. WKRP Mgmt., LLC,* No. 09–01613, 2011 WL 2174496 (D.Colo. June 3, 2011) (same);

---

1. The claims period for the Class extends from March 12, 2011 through present, for a total of 191 weeks.

716

*Smith v. Pizza Hut, Inc.*, No. 09–01632, 2011 WL 2791331 (D.Colo. July 14, 2011) (same); *Hanna v. CFL Pizza, LLC*, No. 05–2011–CA–52949 (Fla. Cir. Ct. Escambia Cnty.2009) (same); *Barkley v. Pizza Hut, Inc.*, No. 14–00376, Doc. No. 73 (M.D.Fla. Sept. 2, 2014) (after losing motion to compel arbitration, defendant pizza company chose to answer rather than move to dismiss when delivery drivers who did not sign arbitration agreements brought under-reimbursement claims similar to those at issue here).

■ Each year, the Internal Revenue Service ("IRS") calculates and publishes a standard mileage reimbursement rate for businesses and employees to use in computing the minimum deductible costs of operating an automobile for business purposes. Class Cert. Mot., Ex. A (Doc. No. 8). "The IRS figure is a national average of the cost of operating a motor vehicle." *Gattuso v. Harte–Hanks Shoppers, Inc.*, 42 Cal.4th 554, 565, 67 Cal.Rptr.3d 468, 169 P.3d 889 (2007). During the relevant claims period, the IRS rate has ranged from $0.51 to $0.565 per mile. Class Cert. Mot., Ex. A (Doc. No. 8). Because Domino's failed to keep detailed contemporaneous records of its delivery drivers' actual expenses, Plaintiff and the Class members are entitled to be reimbursed at the IRS rate. Indeed, Plaintiff and the Class members incurred at least as many vehicle-related expenses as the average business driver owing to the fact that pizza delivery drivers are often required to drive in stop-and-start traffic, in urban areas with parking meters, on a tight schedule, at night, and in inclement weather. See Cmplt. ¶ 26. As a result, the Court finds that the IRS rate is a reasonable approximation of the actual per mile vehicle expenses incurred by Plaintiff and the Class members.

When minimum wage law requires an employer to reimburse an employee for using the employee's vehicle for the employer's benefit, the employer should reimburse the employee at the IRS per mile rate or keep detailed records of the employees' expenses to justify another reimbursement rate. *See* Department of Labor Field Operations Handbook, § 30c15(a) (issued June 30, 2000) (for minimum wage purposes, employer may either reimburse employees who drive a personal vehicle for business use at the IRS rate or keep accurate, contemporaneous expense records and reimburse the employee accordingly); *Gattuso*, 42 Cal.4th at 566, 67 Cal.Rptr.3d 468, 169 P.3d 889 ("If an employer wants to pay less than the established IRS rate, it bears the cost of proving the employee's cost of operating the vehicle for work is actually less."); *Darrow*, 2011 WL 2174496, at .*4 (holding the IRS rate to be a reasonable approximation of a pizza delivery driver's mileage expense).[2]

Defendants required Plaintiff and the Class members to maintain safe, functioning, insured and legally-operable vehicles to make deliveries. Cmplt. ¶ 21; Zellagui Dec. ¶ 5. Defendants also required Plaintiff and the Class to pay for all costs associated with their vehicles, including gasoline, vehicle depreciation, insurance, maintenance and repairs. Cmplt. ¶ 26; Zellagui Dec. ¶ 5. The tipped minimum wage in Pennsylvania is $2.83 per hour. *See* MWA § 3(d). Defendants paid Plaintiff and the Class $6.00 per hour while making deliver-

**2.** *See also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1274 n. 65 (11th Cir. 2008) (noting that "the DOL's Field Operations Handbook is persuasive" in the minimum wage context) (citing *Klinedinst v. Swift Invest., Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001)); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 874 (8th Cir.2011) (affirming that the DOL's Field Operations Handbook is "reasonable, persuasive, and entitled to deference").

ies and a supplemental wage of $1.00 per delivery. Cmplt. ¶ 31; Zellagui Dec. ¶¶ 13, 15. Because Plaintiff made approximately three deliveries per hour, Defendants' paid Plaintiff approximately $9.00 per hour while on the road. Cmplt. ¶¶ 28, 31; Zellagui Dec. ¶¶ 12–13.

However, Plaintiff and the Class members drove an average of five roundtrip miles per delivery and made an average of three deliveries per hour while working for Defendants. Applying the IRS reimbursement rate (which has varied from a low of $0.51 per mile in 2011 to a high of $0.565 per mile in 2013), Plaintiff and the Class members incurred out-of-pocket costs and expenses of between $7.65 per hour (15 miles × $0.51/mile) and $8.48 per hour (15 miles × $0.565/mile) while on the road. *Id.* ¶¶ 28–29, 31–32. Thus, in order for

Plaintiff and the Class members to receive at least the tipped minimum wage of $2.83 per hour, Defendant would have had to pay wages plus reimbursements that ranged between $10.48 and $11.31 per hour.

■ Taking these factual allegations as true, Plaintiff has stated a *prima facie* minimum wage violation based on Defendants' failure to provide proper automotive reimbursements. Based on the evidentiary record, Defendants owe damages to Plaintiff and the Class members as follows:

From March 12, 2011 through June 2011 (15 weeks), the IRS reimbursement rate was $0.51 per mile. Taking Plaintiff's allegations as true, damages for this period are:

| | Hourly Rate | Per Hour (3 deliveries /15 miles) | Per Shift (6 hours) | Per Week (5 shifts) | 15 Weeks |
|---|---|---|---|---|---|
| Wage | $6.00 | $9.00 | $54.00 | $270.00 | $4,050.00 |
| Minimum | $2.83 | $2.83 | $16.98 | $84.90 | $1,273.50 |
| Expenses | | ($7.65) | ($45.90) | ($229.50) | ($3,442.50) |
| Difference | | ($1.48) | ($8.88) | ($44.40) | ($666.00) |
| Total for Class (150 members) | | | | | ($99,900.00) |

From July 1, 2011 through December 2012 (73 weeks), the IRS reimbursement rate was $0.555 per mile. Taking Plaintiff's allegations as true, damages for this period are:

| | Hourly Rate | Per Hour (3 deliveries /15 miles) | Per Shift (6 hours) | Per Week (5 shifts) | 73 Weeks |
|---|---|---|---|---|---|
| Wage | $6.00 | $9.00 | $54.00 | $270.00 | $19,710.00 |
| Minimum | $2.83 | $2.83 | $16.98 | $84.90 | $6,197.70 |
| Expenses | | ($8.33) | ($49.98) | ($249.90) | ($18,242.70) |
| Difference | | ($2.16) | ($12.96) | ($64.80) | ($4,730.40) |
| Total for Class (150 members) | | | | | ($709,560.00) |

From January 2013 through December 2013 (52 weeks), the IRS reimbursement rate was $0.565 per mile. Taking Plaintiff's allegations as true, damages for this period are:

|  | Hourly Rate | Per Hour (3 deliveries /15 miles) | Per Shift (6 hours) | Per Week (5 shifts) | 52 Weeks |
|---|---|---|---|---|---|
| Wage | $6.00 | $9.00 | $54.00 | $270.00 | $14,040.00 |
| Minimum | $2.83 | $2.83 | $16.98 | $84.90 | $4,414.80 |
| Expenses |  | ($8.48) | ($50.88) | ($254.40) | ($13,228.80) |
| Difference |  | ($2.31) | ($13.86) | ($69.30) | ($3,603.60) |
| Total for Class (150 members) |  |  |  |  | ($540,540.00) |

From January 2014 to present (48 weeks), the IRS reimbursement rate has been $0.56 per mile. Taking Plaintiff's allegations as true, damages for this period are:

|  | Hourly Rate | Per Hour (3 deliveries /15 miles) | Per Shift (6 hours) | Per Week (5 shifts) | 48 Weeks |
|---|---|---|---|---|---|
| Wage | $6.00 | $9.00 | $54.00 | $270.00 | $12,960.00 |
| Minimum | $2.83 | $2.83 | $16.98 | $84.90 | $4,075.20 |
| Expenses |  | ($8.40) | ($50.40) | ($252.00) | ($12,096.00) |
| Difference |  | ($2.23) | ($13.38) | ($66.90) | ($3,211.20) |
| Total for Class (150 members) |  |  |  |  | ($481,680.00) |

Adding each of the totals from the four charts above provides a total damages figure of **$1,831,680.00** for Plaintiff's under-reimbursement claim.

### Overtime Hours

The MWA specifically requires employers to pay their hourly employees at least one and one-half times their hourly rate for all hours beyond forty each workweek. *See* MWA § 4(c).

Plaintiff and the Class members typically worked at least 50 hours each week, Cmplt. ¶ 33; Zellagui Dec. ¶¶ 6–9. Defendants never paid their delivery drivers a "time-and-a-half" premium rate for overtime work. Cmplt. ¶¶ 33–37; Zellagui Dec. ¶¶ 15–16. Instead, Defendants provided a regular paycheck every two weeks that included up to 80 hours of work time at $6.00 per hour and, thereafter, provided a supplemental check for hours over 80 per pay period, which were always paid at the straight-time rate of $6.00 per hour. Cmplt. ¶ 34; Zellagui Dec. ¶ 15. Because the minimum wage is $7.25 per hour for non-tipped work, Defendants should have paid Plaintiffs and the Class members at the rate of $10.88 for each overtime hour they worked.

Taking these factual allegations as true, Plaintiff has stated a *prima facie* overtime claim for failure to pay overtime premium wages in violation of the MWA. Based on the evidentiary record, Defendants owe damages to Plaintiff and the Class members in the following amounts:

|  | Hourly Rate | Per Shift (two hours) | Per Week (5 shifts) | 191 Weeks for Class |
|---|---|---|---|---|
| Paid | $6.00 | $12.00 | $60.00 | $11,460.00 |
| Minimum | $10.88 | $21.76 | $108.80 | $20,780.80 |
| Difference | ($4.88) | ($9.76) | ($48.80) | ($9,320.80) |
| Total for Class (150 Members) |  |  |  | ($1,398,120.00) |

Thus, the total damages owed on Plaintiff's overtime claim is **$1,398,120.00.**

### *Total Damages*

In sum, Defendants owe the Class $3,946,050.00 in pre-interest damages. The Class is also entitled to 6% simple interest *per annum. See* 41 P.S. § 202. Over the three-year and eight-month period at issue, statutory interest adds an additional $583,703.66 to Plaintiff's claims, for a total damages figure of **$4,529,753.66.**

### Attorney's Fees

■ Class Counsel have asked the Court to approve a 25% attorneys' fee in this matter. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The percentage-of-recovery method is typically applied to determine the amount of attorneys' fees in common fund cases. *See In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir.2009). Courts in this district routinely issue attorneys' fees at 30% of the common fund. *See, e.g., Esslinger v. HSBC Bank Nevada, N.A.*, No. 10–3213, 2012 WL 5866074, at *14 (E.D.Pa. Nov. 20, 2012) (awarding a 30% fee award and stating that "an average percentage fee recovery in large class action settlements is approximately 30%"), *appeal dismissed* (Apr. 2, 2013), *appeal dismissed* (Apr. 12, 2013), *appeal withdrawn* (Apr. 16, 2013); *In re Processed Egg Prods. Antitrust Litig.*, No. 08–2002, 2012 WL 5467530, at *3 (E.D.Pa. Nov. 9, 2012) (approving a 30% fee award).

■ In awarding fees in common fund cases, Courts typically consider the following factors:

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir.2005) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000)).

In analyzing the first factor noted above, courts sometimes apply a sliding-scale approach where the greater the recovery, the lesser the percentage of attorneys' fees, and vice-versa. However, because each case is unique, the Third Circuit has "generally cautioned against overly formulaic approaches in assessing and determining the amounts and reasonableness of attorneys' fees." *See id.* at 303. Indeed, courts in this District have authorized significant percentages of the recovery in cases with judgments much greater than here. *See, e.g., Meijer, Inc. v. 3M,* No. 04–5871, 2006 WL 2382718, at *25 (E.D.Pa. Aug. 14, 2006) (approving $7.5 million in attorneys' fees, which was 27.4% of the recovery). Here, the overall recovery is only slightly above average for class actions of this size, and thus this factor is neutral.

As to the second factor, the Defendants are in default and the Class members have yet to be identified. As a result, this factor cannot be evaluated.

The third factor favors the proposed fee award. Class Counsel, David J. Cohen, Esq. of Kolman Ely, P.C. and Jeremiah Frei–Pearson, Esq. of Finkelstein, Blankinship, Frei–Pearson & Garber, LLP, are highly skilled wage and hour attorneys who have been appointed as class counsel

in similar cases and who have successfully prosecuted this case to judgment.

The fourth and sixth factors are the primary reasons why Class Counsel have requested a more modest fee award of 25% instead of the 30% that is often awarded in common fund cases. Default judgment was entered against Defendants, so the time spent on the case is naturally less than it would have been had Defendants chosen to answer or in any way respond to the Complaint.

The fifth factor, the risk of non-payment, is a significant consideration here. As this is a default judgment case, Class Counsel will likely have to expend considerable resources postjudgment in order to enforce this judgment and, even so, may still have difficulty collecting the monies at issue. *See, e.g., Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 326 (3d Cir. 2011) (noting risk of nonpayment due to default judgment against foreign corporation supported 25% recovery).

Finally, the seventh factor supports approval of the requested fee, because this percentage is lower than the typical award in similar cases. *See, e.g., Hall v. Best Buy Co., Inc.,* 274 F.R.D. 154, 173 n. 114 ("Attorneys' fees of approximately 30 percent of the common fund are . . . regularly awarded in labor and employment class actions.") (citations omitted) (collecting cases). Given the size of the judgment, a 25% fee award is over $225,000.00 less than a 30% award that is standard in similar cases. Class Counsel are therefore voluntarily leaving a significant amount of money on the table. This is eminently reasonable under the circumstances.

After considering the *Gunter* factors, the Court is satisfied that the 25% attorneys' fee requested by Class Counsel is reasonable. *See, e.g., Young v. Tri Cnty. Sec. Agency, Inc.,* No. 13–5971, 2014 WL 1806881, at *9 (E.D.Pa. May 7, 2014) (noting that 19–45% is typical in common fund cases and authorizing 24.8% in attorneys' fees where attorneys billed 44.9 hours); *Lenahan v. Sears, Roebuck & Co.,* No. 02–0045, 2006 WL 2085282, at *24 (D.N.J. July 24, 2006) (granting 30% attorneys' fees in $15 million wage and hour case), *aff'd,* 266 Fed.Appx. 114 (3d Cir.2008); *Sullivan,* 667 F.3d at 326 (approving 25% of recovery in default judgment case).

**WHEREAS,** the Court issued an Order on October 31, 2014 requiring Defendants to show cause at a hearing on November 10, 2014 why a judgment should not be entered against them and why damages should not be assessed against them;

**WHEREAS,** Plaintiff timely served Defendants with a copy of this Order by Certified U.S. Mail and filed their Proof of Service with the Court on November 10, 2014;

**WHEREAS,** at the hearing on November 10, 2014, Class Counsel established that they have provided Defendants with adequate notice both of the key events in this litigation and of the show-cause hearing;

**WHEREAS,** at the hearing on November 10, 2014, Plaintiff presented sufficient proof of the damages outlined above to permit an informed calculation of the value of his claim on a class-wide basis and justify entry of a judgment in his favor. *See* Fed.R.Civ.P. 55(b)(2); *Durant v. Husband,* 28 F.3d 12 (3d Cir.1994); *World Entm't, Inc. v. Brown,* 2011 WL 2036686, 2011 U.S. Dist. LEXIS 55182 (E.D.Pa. May 20, 2011); and

**WHEREAS,** the Court is satisfied that the 25% attorneys' fee requested by Class Counsel is reasonable under the test promulgated in *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190 (3d Cir.2000);

**AND NOW,** this 13th day of November 2014, upon consideration of Plaintiff's

Complaint, Plaintiff's class and collective action certification filing, Plaintiff's motion for a default judgment hearing, and the additional evidence presented during the show cause hearing, Plaintiff's motion for a Default Judgment is GRANTED and a Default Judgment is entered pursuant to Federal Rule of Civil Procedure 55(b)(2) in favor of Plaintiff Haroun Zellagui, for himself and all others similarly situated, and against Defendants MCD Pizza, Inc. and Serah Enterprises, Inc. It is further ORDERED as follows:

1. Defendants shall provide Class Counsel with a list of the names, last known addresses, and last known telephone numbers of all delivery drivers who worked in Defendants' stores from March 12, 2011 to present;

2. Defendants shall transfer $4,529,753.66 to the Garden City Group to be held in escrow until the Class members have been identified, at which point the funds shall be divided and distributed proportionally based on the number of weeks each Class member worked for Defendants;

3. Class Counsel are awarded an attorney's fee equal to 25% of the damages awarded above; and

4. Defendants shall hereafter: pay each of their delivery drivers at least the non-tipped minimum wage for each hour spent performing in-store work; reimburse their delivery drivers for their vehicle expenses at the IRS reimbursement rate; and pay their delivery drivers at least one-and-one-half times their regular rate of pay for each hour they work beyond 40 in any seven-day workweek or risk additional sanctions upon further application to the Court.