Filed 8/12/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| COLIN COCHRAN, | B247160 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC449547) |
| v. | |
| SCHWAN'S HOME SERVICE, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County. Teresa Sanchez-Gordon, Judge. Reversed.

Law Offices of Kevin T. Barnes, Kevin T. Barnes, Gregg Lander; Kokozian Law Firm and Bruce Z. Kokozian, for Plaintiff and Appellant.

Kutak Rock, Matthew C. Sgnilek; and Alan L. Rupe, for Defendant and Respondent.

_____

We hold that when employees must use their personal cell phones for work-related calls, Labor Code section 2802[1] requires the employer to reimburse them. Whether the employees have cell phone plans with unlimited minutes or limited minutes, the reimbursement owed is a reasonable percentage of their cell phone bills. Because the trial court relied on erroneous legal assumptions about the application of section 2802, we must reverse the order denying certification to a class of 1,500 service managers in an action against Schwan's Home Service, Inc. (Home Service) seeking, inter lia, reimbursement of work-related cell phone expenses. Upon remand, the trial court shall reconsider the motion for class certification in light of our interpretation of section 2802. When reconsidering the motion, it shall apply the principles set forth in *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1 (*Duran*) to the degree that the class representative, Colin Cochran (Cochran), proposes to use statistical sampling evidence to establish either liability or damages. The parties shall have the opportunity to revise their papers to address the issues raised herein.

## FACTS

Cochran filed a putative class action against Home Service on behalf of customer service managers who were not reimbursed for expenses pertaining to the work-related use of their personal cell phones. He alleged causes of action for violation of section 2802; unfair business practices under Business and Professions Code section 17200 et seq.; declaratory relief; and statutory penalties under section 2699, the Private Attorneys-General Act of 2004.

He moved to certify the class. Home Service filed an opposition as well as a motion to deny certification.

On October 24, 2012, the trial court held a hearing. It found that the class was ascertainable; the class was sufficiently numerous because it included 1,500 people; Cochran was a typical as well as an adequate class member; and counsel for the putative class was qualified to act as class counsel. Next, the trial court analyzed commonality. It

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

determined that the elements of a section 2802 claim were: (1) expenditures by the customer service managers; (2) the expenditures were necessarily incurred in the discharge of their duties; (3) Home Service knew or had reason to know of the expenditures; and (4) Home Service did not exercise due diligence to reimburse the expenditures. The trial court concluded that common questions predominated regarding issues 2, 3 and 4. As to the first issue, Home Service, argued that the expenditure element "is subject to . . . individual questions because many people now have unlimited data plans for which they do not actually incur an additional expense when they use their cell phone. In order to determine whether an expense was incurred for [a class member's] business use will require an examination of each class member's cell phone plan[.]" Cochran argued "that whether [a class member] actually incurred an expense when using their personal cell phone for work is an issue of damages and individualized damages do not impact the commonality analysis." In the trial court's view, Cochran "misstate[d] the elements of a failure to reimburse claim," explaining that "[t]he showing of an actionable expenditure or loss by . . . class member[s] pertains to [Home Service's] liability, not to class members' damages as it is set forth in . . . section 2802. If the class member[s] did not incur . . . loss[es], there can be no liability." Next, the trial court noted that there was an issue regarding whether Cochran or his girlfriend paid for his phone bill, implying that whether each class member paid for his or her phone bill was an issue. Also, it found that the expenditure inquiry would involve questions about whether class members "purchased . . . different cell phone plans because of their work cell phone usage." Because Cochran did not provide a means for managing these questions, the trial court ordered further briefing. It deferred ruling on whether a class action was a superior method for adjudicating the claims.

In his supplemental brief, Cochran argued that statistical evidence and representative testimony could be used to establish Home Service's liability. The brief was supported by the expert declaration of G. Michael Phillips, Ph.D., an economist and statistician. He opined that there were two methods for establishing liability as well as damages. First, he could assume damages of $2 per day, which was the amount he

3

claimed that Home Service reimbursed putative class members in 2006-2007. Second, he could conduct a survey.

Regarding the latter method, Dr. Phillips provided a 22-question draft survey. He stated: "A survey implementation plan would proceed as follows: first, a letter would be mailed to the address of each class member, informing them that they would be called in the next few days to take part in an important survey. It would ask them to find their cellular telephone records, if possible, to assist with accurate data collection. Next, an interviewer would attempt to call each class member and administer the telephonic survey. For working numbers, up to five attempts would be made, at varying days and times, to reach each class member by phone. In the instance that an initial call reached a nonworking number, an attempt would be made to find an alternative number. The data from the survey would then be analyzed for potential nonsampling errors through standard statistical procedures, and finally used for analysis of reported losses and expenditures by class members."

On January 31, 2013, the trial court held a second hearing. It denied class certification due to lack of commonality, and because a class action was not a superior method of litigating the claims. It noted that there was a question as to "whether the cell phone charges [Cochran] allegedly incurred were incurred and paid for by him or by his live-in girlfriend," and explained that this issue was resolved only after Cochran was examined. In addition, the trial court stated that Home Service "would be entitled to ask whether each driver purchased a different cell phone plan, because of their work cell phone usage[,]" and therefore Home Service had "demonstrated that these individual issues exist for" class members. The trial court added that statistics from a survey could not be used to prove liability, especially because there was no pattern or practice regarding the expenditures or losses of class members. It concluded: "[Cochran] has not demonstrated how the cell phone plans and method of payment exhibited by a portion of the class will accurately reflect the plans and method of payment for the entire class. . . . Therefore, individualized inquiries of the class members' cell phone plans and payments are necessary to determine liability. This inquiry for 1500 class members, as

4

evidenced by the four-page 22 question survey, will overwhelm the liability determination. Therefore, common questions do not predominate[.]"

This timely appeal followed.

## DISCUSSION

### I.  Class Certification Law; Standard of Review.

A party seeking class certification must demonstrate an ascertainable class and a well-defined community of interest. (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 142–143.)  The requisite community interest is established when there are predominate common questions, the class representatives have claims or defenses typical of the class, and the class representatives can adequately represent the class. (*Id*. at p. 143.)  Generally, "'if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' [Citations.]" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022.)

When sufficient common questions predominate, "it may be possible to manage individual issues through the use of surveys and statistical sampling." (*Duran*, *supra*, 59 Cal.4th at p. 31.)  *Duran*, a case involving a wage and hour class action, explained that sampling is a "methodology based on inferential statistics and probability theory. 'The essence of the science of inferential statistics is that one may confidently draw inferences about the whole from a representative sample of the whole.' [Citation.]  Whether such inferences are supportable, however, depends on how representative the sample is. '[I]nferences from the part to the whole are justified [*only*] when the sample is representative.' [Citation.]  Several considerations determine whether a sample is sufficiently representative to fairly support inferences about the underlying population." (*Duran*, *supra*, at p. 38.)  Those considerations include variability in the population, whether size of the sample is appropriate, whether the sample is random or infected by selection bias, and whether the margin of error in the statistical analysis is reasonable. (*Id*. at pp. 38–46.)  At the certification stage, a trial court "should consider . . . whether a [statistical] plan has been developed[.]" (*Id.* at p. 31.)  *Duran* noted that the use of

5

statistical sampling to prove liability in overtime class actions is controversial, and explained that the use of it to prove damage is less so because "the law tolerates more uncertainty with respect to damages than to the existence of liability." (*Id*. at p. 40.) The court stopped short of deciding whether sampling "should be available as a tool for proving liability in a class action." (*Ibid*.) Instead, inter alia, it warned that "when statistical methods such as sampling are appropriate, due concern for the parties' rights requires that they be employed with caution." (*Id*. at p. 41.)

Whether to grant or deny class certification is a matter within a trial court's discretion. That said, "appellate review of orders denying class certification differs from ordinary appellate review. Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct. [Citation.] But when denying class certification, the trial court must state its reasons, and we must review those reasons for correctness. [Citation.] We may only consider the reasons stated by the trial court and must ignore any unexpressed reason that might support the ruling. [Citations.] [¶] We will affirm an order denying class certification if any of the trial court's stated reasons was valid and sufficient to justify the order, and it is supported by substantial evidence. [Citations.] We will reverse an order denying class certification if the trial court used improper criteria or made erroneous legal assumptions, even if substantial evidence supported the order. [Citations.] A trial court's decision that rests on an error of law is an abuse of discretion. [Citations.]" (*Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939.)

## II. Section 2802.

Pursuant to section 2802, subdivision (a), "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer[.]" The purpose of this statute is "'to prevent employers from passing their operating expenses on to their employees.'" (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 562 (*Gattuso*) [quoting legislative history from the 2000 amendment to the statute].) "In calculating the reimbursement amount due under

6

section 2802, the employer may consider not only the actual expenses that the employee incurred, but also whether each of those expenses was 'necessary,' which in turn depends on the reasonableness of the employee's choices. [Citation.]" (*Gattuso*, *supra*, 42 Cal.4th at p. 568.)

The threshold question in this case is this: Does an employer always have to reimburse an employee for the reasonable expense of the mandatory use of a personal cell phone, or is the reimbursement obligation limited to the situation in which the employee incurred an extra expense that he or she would not have otherwise incurred absent the job? The answer is that reimbursement is always required. Otherwise, the employer would receive a windfall because it would be passing its operating expenses onto the employee. Thus, to be in compliance with section 2802, the employer must pay some reasonable percentage of the employee's cell phone bill. Because of the differences in cell phone plans and worked-related scenarios, the calculation of reimbursement must be left to the trial court and parties in each particular case.

## III. The Order Denying Class Certification Must be Reversed Because the Court Made Erroneous Legal Assumptions.

When ruling, the trial court assumed that an employee does not suffer an expenditure or loss under section 2802 if his or her cell phone charges were paid for by a third person, or if the employee did not purchase a different cell phone plan because of cell phone usage at work. In addition, the trial court assumed that liability could not be determined without an inquiry into the specifics of each class members' cell phone plan. As we discuss, each of these legal assumptions was erroneous.

If an employee is required to make work-related calls on a personal cell phone, then he or she is incurring an expense for purposes of section 2802. It does not matter whether the phone bill is paid for by a third person, or at all. In other words, it is no concern to the employer that the employee may pass on the expense to a family member or friend, or to a carrier that has to then write off a loss. It is irrelevant whether the employee changed plans to accommodate worked-related cell phone usage. Also, the details of the employee's cell phone plan do not factor into the liability analysis. Not

only does our interpretation prevent employers from passing on operating expenses, it also prevents them from digging into the private lives of their employees to unearth how they handle their finances vis-a-vis family, friends and creditors. To show liability under section 2802, an employee need only show that he or she was required to use a personal cell phone to make work-related calls, and he or she was not reimbursed. Damages, of course, raise issues that are more complicated.

Because the trial court made erroneous legal assumptions, the denial of class certification must be reversed.

All other issues are moot.

## DISPOSITION

The order denying class certification is reversed. Upon remand, the trial court shall reconsider Cochran's motion. In doing so, the trial court shall heed our interpretation of section 2802 and apply the principles set forth in *Duran* regarding statistical sampling. Cochran shall have the opportunity to revise its motion, and Home Service shall have the opportunity to respond.

Cochran shall recover his costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, Acting P. J.
       ASHMANN-GERST


We concur:


_____, J.   _____, J.[*]
    CHAVEZ                   FERNS

_____

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.