Filed 7/11/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PAUL THAI et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>    Defendant and Respondent. | A165390<br><br>(San Francisco County<br>Super. Ct. No. CGC-20-588422) |

On March 19, 2020, in response to the COVID-19 pandemic, California Governor Gavin Newsom issued an order requiring residents to stay at home except as needed to maintain operations in critical sectors. (Governor's Exec. Order No. N-33-20 (Mar. 19, 2020)) (E.O. N-33-20).[1] At that time, lead plaintiff Paul Thai was employed by defendant and respondent International Business Machines Corporation (IBM), which directed its employees to continue working at home.

Plaintiffs seek penalties against IBM under California's Private Attorneys General Act (PAGA; Labor Code § 2699 et seq.)[2] for alleged violations of section 2802, subdivision (a) (section 2802(a)), which requires an employer to reimburse an employee "for all necessary expenditures . . .

[1] <https://www.gov.ca.gov/wp-content/uploads/2020/03/EO-N-33-20-COVID-19-HEALTH-ORDER-03.19.2020-002.pdf>

[2] All further undesignated statutory references are to the Labor Code.

1

incurred by the employee in direct consequence of the discharge of his or her duties."[3]  Plaintiffs contend IBM failed to reimburse Mr. Thai and other employees for the expenses necessarily incurred to perform their work duties from home.  The trial court sustained IBM's demurrer, concluding the Governor's order was an intervening cause of the work-from-home expenses that absolved IBM of liability under section 2802.  Because the court's conclusion is inconsistent with the statutory language, we reverse.

BACKGROUND[4]

Mr. Thai was a direct employee of IBM.[5]  To accomplish his duties, he required, among other things, internet access, telephone service, a telephone headset, and a computer and accessories.  It may be inferred from the complaint that IBM provided those items to its employees in its offices.

On March 19, 2020, Governor Newsom signed E.O. N-33-20.[6]  The order instructed all California residents to heed a Department of Public

---

[3] As we later explain, the action was originally brought by another plaintiff against Experis US, Inc. (Experis), a staffing agency, but Mr. Thai is the current lead plaintiff and IBM is the only named defendant remaining in the case.

[4] The present appeal involves an order sustaining a demurrer, and " ' "[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed."  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' "  (*Rincon Band of Luiseño Mission Indians etc. v. Flynt* (2021) 70 Cal.App.5th 1059, 1085 (*Rincon Band*).)  Our background statement reflects that standard of review.

[5] While plaintiffs' brief states that Mr. Thai "works" for IBM, IBM characterizes him as a "former" employee.  His present employment status is not relevant on appeal.

[6] Plaintiffs mistakenly reference a previous order, Governor's Executive Order No. N-27-20 (Mar. 15, 2020), but that order issued directives to California agencies regarding the prioritization of resources and did not

Health order that directed, effective immediately, "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors" and any other additional sectors later designated as critical. (E.O. N-33-20.)

After the Governor's order went into effect, IBM directed Mr. Thai and several thousand of his coworkers to continue performing their regular job duties from home. Mr. Thai and his coworkers personally paid for the services and equipment necessary to do their jobs while working from home. IBM never reimbursed its employees for these expenses, despite knowing that its employees incurred them.

In December 2020, another employee, Umair Javed, filed the present PAGA action on behalf of the California Labor & Workforce Development Agency and other aggrieved employees. Mr. Javed originally sued his employer Experis, but he added IBM as a defendant in a first amended complaint, which alleged the defendants were joint employers.[7] A second amended complaint added Mr. Thai, a direct IBM employee, as an additional PAGA representative. The second amended complaint alleged IBM failed to reimburse employees for work-from-home expenses that were incurred once "the COVID-19 shelter in place orders were put in place, in early March 2020." The complaint sought penalties on behalf of all IBM employees "who were subject to stay-at-home orders and/or whose offices where they were assigned to work were closed due to the COVID-19 pandemic. . ."

_____

contain the stay-at-home order. (<https://www.library.ca.gov/wp-content/uploads/GovernmentPublications/executive-order-proclamation/40-N-27-20.pdf>)

[7] The parties agree Mr. Javed subsequently dismissed his claims, so Mr. Thai and IBM are the remaining named plaintiff and defendant.

In August 2021, IBM demurred to the second amended complaint and the trial court sustained the demurrer with leave to amend. The court's comments at the hearing on the motion indicated that it sought an allegation that "IBM had a practice prior to COVID of allowing or encouraging or directing work from home."

In December 2021, plaintiffs filed the third amended (and operative) complaint. IBM again demurred, and, in March 2022, the trial court sustained the demurrer without leave to amend. The court reasoned, "Plaintiffs are unable to allege IBM's instructions to employees to work from home [were] the independent, direct cause of Plaintiffs and the Aggrieved Employees incurring necessary business expenses. . ." Because "IBM was acting in response to government orders," there was an "intervening cause precluding direct causation by IBM."

The court entered judgment in favor of IBM in April 2022. The present appeal followed.

## DISCUSSSION

Plaintiffs contend the trial court's ruling is contrary to the plain language of section 2802(a). We agree.

Our review of the trial court's decision is de novo. (*Rincon Band*, *supra*, 70 Cal.App.5th at p. 1085.) "We independently examine the operative complaint 'to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' " (*Ibid.*) "When construing a statute, a court's goal is 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citations.] Generally, the court first examines the statute's words, giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator

4

of legislative intent." (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567 (*Gattuso*).) "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

Section 2802(a) provides in relevant part, "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . ." Subdivision (c) of section 2802 defines " 'necessary expenditures or losses' " as including "all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."[8]

"Section 2802 is designed to protect workers from bearing the costs of business expenses that are incurred by workers doing their jobs in service of an employer." (*Gallano v. Burlington Coat Factory of California, LLC* (2021) 67 Cal.App.5th 953, 963 (*Gallano*); see also *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 952 (*Edwards*) [section 2802 codifies " 'strong public policy that favors' " reimbursement of employees]; *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 74, fn. 24 [section 2802 "shows a legislative intent that duty-related losses ultimately fall on the business enterprise, not on the individual employee"]; *Grissom v. Vons Companies, Inc.*

_____

[8] The language in section 2802(a) derives from substantially similar language in former section 1969 of the Civil Code, enacted in 1872. (*Gattuso*, *supra*, 42 Cal.4th at p. 562.)

(1991) 1 Cal.App.4th 52, 59–60 [the purpose of section 2802 is "to protect employees from suffering expenses in direct consequence of doing their jobs"].)  In *Gattuso*, *supra*, 42 Cal.4th at page 562, the California Supreme Court observed, "At the time of the 2000 amendment of section 2802, legislative committee analyses identified the purpose of that provision: 'The author [of the amending legislation] states that Section 2802 is designed to prevent employers from passing their operating expenses on to their employees.' "

"In light of the remedial purpose of statutes that regulate 'wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection . . .' " (*Gallano*, *supra*, 67 Cal.App.5th at p. 963 [applying liberal construction rule to section 2802].)

" ' "The elements of a [section 2802(a)] cause of action, as delineated by the statutory language, are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." ' " (*Gallano*, *supra*, 67 Cal.App.5th at p. 960.)  Only the second element is at issue in the present appeal.[9]  IBM argues, "It was only after March 2020 that Plaintiff began to incur work-from-home expenses, not because his job duties changed—he concedes they did not—but because the government required him to stay at home.  The government's order was thus an intervening cause, foreclosing any possible allegation that IBM was the direct cause."

---

[9] Accordingly, we need not and do not consider what expenditures can be considered "reasonable costs" of working from home (§ 2802, subd. (c)), or to what extent an employer must reimburse an employee for expenses incurred for both personal and work purposes.

Appellant points out that IBM's argument was rejected in another, very similar case. In *Williams v. Amazon.com Services LLC* (N.D.Cal. June 1, 2022, No. 22-cv-01892-VC) 2022 U.S. Dist. Lexis 97920, the plaintiff sought reimbursement under section 2802 for "expenses he incurred while working from home during the COVID-19 pandemic." (*Id.* at p. *1.) The defendant, like IBM, argued the expenses "were the result of government stay-at-home orders, not any action by Amazon." (*Id.* at pp. *1–2.) The federal district court rejected that argument, reasoning, "even if true, that does not absolve Amazon of liability. What matters is whether [the plaintiff] incurred those expenses 'in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer.' [§ 2802(a).] According to the complaint, Amazon expected [the plaintiff] to continue to work from home after the stay-at-home orders were imposed. That is sufficient to plausibly allege liability, even if Amazon itself was not the but-for cause of the shift to remote work." (*Id.* at p. *2.)

We agree. As noted previously, the trial court concluded the March 2020 order was an "intervening cause precluding direct causation by IBM." The court and IBM read the statute as if it requires reimbursement only for expenses *directly caused by* the employer. But that inserts into the analysis a tort-like causation inquiry that is not rooted in the statutory language. (See *Akins v. County of Sonoma* (1967) 67 Cal.2d 185, 199 [discussing the "intervening cause" concept in the context of determining proximate cause in a negligence action].)[10] Instead, the plain language of section 2802(a) flatly requires the employer to reimburse an employee for all expenses that are a

---

[10] Elsewhere in its brief, IBM concedes, "the Legislature did not adopt proximate causation standards into section 2802—the term appears nowhere in the statute, even though it appears elsewhere in other California statutes."

"direct consequence of the discharge of [the employee's] duties." Under the statutory language, the obligation does not turn on whether the employer's order was the proximate cause of the expenses; it turns on whether the expenses were actually due to performance of the employee's duties. It may be true that the Governor's March 2020 order was the "but-for" cause of certain work-from-home expenses, but nothing in the statutory language can be read to exempt such expenses from the reimbursement obligation. Effectively, section 2802(a) allocates the risk of unexpected expenses to the employer, which is consistent with the Legislature's intent in adopting the statute.

In arguing for its causation approach, IBM points to a dictionary definition of "direct" as "marked by absence of an intervening agency, instrumentality, or influence." (Merriam-Webster Dict. Online (2023) <https://www.merriam-webster.com/dictionary/direct> [as of May 22, 2023].) It then argues, "This dictionary definition makes clear that only expenses directly caused by the employer—without any intervening cause—are covered by section 2802." But that analysis involves a sleight of hand: section 2802(a) refers to expenses that are the "direct consequence of the discharge of [an employee's] duties," not to expenses that are "directly caused by the employer." Thus, while the suggested definition of "direct" is appropriate, the use of the term in the statute makes clear that the expenses at issue must actually be a consequence of the work duties, rather than due to something else.[11]

---

[11] For example, although we need not address the issue in the present appeal, it may be that the "direct consequence" language is relevant in determining whether and to what extent expenses that an employee was already incurring for personal reasons are reimbursable under section 2802. (See *Gattuso*, *supra*, 42 Cal.4th at p. 568 [determination of "actual

IBM also points to language in the decision *In re Acknowledgment Cases* (2015) 239 Cal.App.4th 1498 (*Acknowledgment Cases*), at page 1506, to the effect that "it is established that the broad purpose of []section 2802 is to require an employer to bear all of the costs inherent in conducting its business and to indemnify employees from costs incurred in the discharge of their duties for the employer's benefit." (*Ibid.*, citing *Edwards*, *supra*, 44 Cal.4th at p. 952.) IBM suggests the work-from-home expenses are neither "inherent" to its business nor for its "benefit," given the public health purpose behind the Governor's March 2020 order. We observe that neither section 2802 nor the *Edwards* decision contains the "inherent" or "benefit" language. But we need not decide whether that additional language in the *Acknowledgment Cases* formulation is consistent with section 2802(a), because, following the March 2020 order, the work-from-home expenses *were* inherent to IBM's business and there can be no question that the *work performed* was for the benefit of IBM. Therefore, the *Acknowledgment Cases'* formulation does not support IBM's position in the present case.

We also reject IBM's suggestion that the holding in *Acknowledgment Cases*, *supra*, 239 Cal.App.4th 1498, supports IBM's position that "an employer is not liable under section 2802 for expenses imposed by an intervening government mandate." In that case, the Los Angeles Police Department "require[d] that all newly hired police officers attend and graduate from the Los Angeles Police Academy." (*Id.* at p. 1501.) However, because "the city realized that many officers who graduated from the

expense[s]" for use of personal automobile for work requires apportionment of automobile "expenses between business and personal use"]; *Cochran v. Schwan's Home Serv., Inc.* (2014) 228 Cal.App.4th 1137, 1144 (*Cochran*) [employer must pay "some reasonable percentage of the employee's cell phone bill" even if employee did not incur an extra expense].)

9

academy were leaving within a few years to join other law enforcement agencies," the city also required any officer hired by the police department "to reimburse the city a prorated portion of the cost of training at the academy" if the officer left and commenced work for another law enforcement agency within certain timeframes. (*Id.* at pp. 1501–1502.) Officers challenged the reimbursement requirement under section 2802, arguing "the cost of the academy is a necessary expenditure incurred as a direct consequence of the discharge of the officer's duties." (*Id.* at p. 1505.) The city argued the statute did not apply "because the training recruits receive is mandated by law under the peace officer standards and training (POST) legislation." (*Ibid.*)

The court of appeal concluded section 2802 was ambiguous as to an employer's responsibility for "training costs." (*Acknowledgment Cases*, *supra*, 239 Cal.App.4th at p. 1505.) The court held it was consistent with the purpose of the statute "to require that where an individual must, as a matter of law, have a license to carry out the duties of his or her employment, the employee must bear the cost of obtaining the license. It is also consistent with this purpose to require an employer to bear the cost of training that is not required to obtain the license but is intended solely to enable the employee to discharge his or her duties." (*Id.* at p. 1506.) In concluding that "POST certification training" is "not an expense of discharging the duties of employment," the court emphasized that such training "is in effect licensure to act as a peace officer" and that "any individual may obtain the required training." (*Id.* at p. 1507.) *Acknowledgment Cases* is inapposite; the present case does not involve training but rather operating expenses incurred in the discharge of duties for IBM. The police officer training and licensure involved in *Acknowledgment Cases* was general and portable to different employers and, thus, not incurred in direct consequence of the discharge of duties for the

10

Los Angeles Police Department itself.[12] (*See USS-Posco Indus. v. Case* (2016) 244 Cal.App.4th 197, 207 [distinguishing between training for a "readily transferable occupation" and "employer-specific training"].)

IBM also argues its position finds support in the federal district court's decision in *Hess v. United Parcel Service, Inc.* (N.D.Cal., April 29, 2021, No. 3:21-cv-00093-WHA) 2021 U.S. Dist. Lexis 82515 (*Hess*), another COVID-era case. In *Hess*, the court held section 2802 did not obligate the defendant employer to reimburse its employees for the costs of personal protective equipment (such as masks and hand sanitizer). (*Id.* at p. *12.) The court reasoned those items "were not reimbursable as business expenditures because they were generally usable in all circumstances" and the county "required masks to be worn indoors in public generally." (*Id.* at p. *11.) *Hess* is distinguishable: the plaintiff's need for masks and similar protective equipment was not a direct consequence of her work duties because those items were "generally usable" personal items for which employers need not reimburse employees. (*Townley v. BJ's Restaurants, Inc.* (2019) 37 Cal.App.5th 179, 185 [applying rule that "generally usable" items of clothing need not be reimbursed under section 2802]; but see *Sprewell v. Fed. Express Corp.* (C.D.Cal., Sept. 30, 2021, No. 2:20-cv-11612-SVW-AGR) 2021 U.S. Dist. Lexis 246673, pp. *10-11 & fn. 7 [COVID-era case upholding section 2802 claim for expenses for masks and sanitizing wipes and expressing doubt about scope of "generally usable" exception]; *Gattuso*, *supra*, 42 Cal.4th at p. 568 [requiring reimbursement for use of personal automobile for work]; *Cochran*, *supra*, 228 Cal.App.4th at p. 1144 [requiring

---

[12] We observe that, although the trial court ultimately sided with IBM under a misplaced causation analysis, the court declined to rely on *Acknowledgment Cases*, because the decision was about "training costs" rather than "operating costs."

reimbursement for use of personal cell phone for work].)  By contrast, at issue in the present case are operating costs incurred by employees in performance of their actual work duties for IBM at home.[13]

Additionally, as plaintiffs point out, in *Acknowledgment Cases* and *Hess* the employers categorically disputed their reimbursement obligations for the expenses at issue (certification for officers who left employment and personal protective items, respectively).  But, in the present case, IBM does not dispute that the expenses at issue are the types of expenses IBM paid for at its offices.  IBM states that, before the pandemic, "IBM provided its employees with office space and all the other tools that form the basis of [plaintiffs'] claims."  That is a fundamental distinction between the present case and *Acknowledgment Cases* and *Hess*.  In those cases, the issue was whether employers could be held liable for the types of expenses at issue, while in the present case there is no dispute that the types of expenses at issue are ones for which IBM is liable.  Instead, the only question is whether the circumstance that the expenses were being incurred at employees' homes following the March 2020 order changes IBM's reimbursement obligation.  For the reasons already given, the answer is no.

---

[13] The *Hess* court also observed, "the mask requirement was not an expense UPS required its employees to incur for its benefit, but instead an obligation imposed on it by law.  The same is true of the other items plaintiff seeks reimbursement for." (*Hess*, *supra*, U.S. Dist. Lexis 82515, at p. *12.) Although we need not decide whether it is appropriate to separately consider whether actual expenses incurred in performance of work duties were for the employer's "benefit," there can be no question the expenses at issue in the present case were for IBM's benefit, given that the expenses relate to the tools required to actually accomplish the plaintiffs' work duties.

## DISPOSITION

The trial court's judgment is reversed and the matter is remanded for further proceedings consistent with this decision. Costs on appeal are awarded to plaintiffs.

_____
SIMONS, J.

We concur.

_____
JACKSON, P. J.

_____
BURNS, J.

(A165390)

**Paul Thai et al. v. International Business Machines Corp. (A165390)**

Trial Judge:      Hon. Anne-Christine Massullo

Trial Court:      San Francisco County Superior Court

Attorneys:

      Ackermann & Tilajef, P.C., Craig J. Ackermann and Avi Kreitenberg; Gerstein Harrow LLP, Jason Harrow, Charles Gerstein, and Emily Gerrick for Plaintiffs and Appellants.

      Jones Day, Kelsey A. Israel-Trummel, Renee Pauline T. Perez, Matthew W. Lampe, and Wendy C. Butler for Defendant and Respondent.